<div align="center">

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

</div>

| | |
|---|---|
| **CHARLES C. FISKE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 07-40174-FDS |
| ) | |
| **SANDVIK MINING and CONSTRUCTION** ) | |
| **USA, LLC,** ) | |
| ) | |
| Defendant. ) | |

<div align="center">

**MEMORANDUM AND ORDER ON DEFENDANT'S
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

</div>

**SAYLOR, J.**

This is a product liability action arising out of an accident involving a well-drilling rig. Plaintiff Charles C. Fiske was injured by an allegedly defective drill rig manufactured by Driltech, Inc., the corporate predecessor of defendant Sandvik Mining and Construction USA, LLC. Subject matter jurisdiction is based on diversity of citizenship.

Fiske is a former Massachusetts resident, suing in a Massachusetts court based on an accident that occurred in Massachusetts. Ordinarily, such a case would present no jurisdictional issues. Here, however, the product at issue was neither manufactured nor sold in Massachusetts. Instead, the rig was manufactured by Driltech in Florida and sold new to a customer in Minnesota; it arrived in Massachusetts as a piece of used equipment, after several intervening sales. The issue presented is whether Sandvik, as the successor to Driltech, is subject to personal jurisdiction in this Court.

Sandvik has moved to dismiss the case on grounds of lack of personal jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(3). For the reasons stated below, the motion will be denied without prejudice to its renewal after plaintiff is afforded an opportunity for jurisdictional discovery.

## I.  Background

### A.  Plaintiff's Injury

Charles C. Fiske is a current resident of Big Oak Valley, California. In 2004, Fiske resided in Rutland, Massachusetts. On August 6, 2004, he went to property at 233 Pleasantdale Road in Rutland, where employees of Welltech Corporation were performing a well-drilling operation for a single family home to be constructed on the site. Fiske held a private mortgage on the property, and he was checking on the status of the well-drilling project. Fiske was standing near the operating drill rig and conversing with a Welltech employee, John Wentworth, when a 20-foot long, 400-pound iron drill rod ejected from the rig, striking Fiske and knocking him to the ground. Fiske suffered severe injuries that left him a paraplegic requiring around-the-clock care.

### B.  The Drill Rig

Sandvik Mining and Construction USA, LLC, is a limited liability company organized under Delaware law with a principal place of business in Alachua, Florida. Sandvik is the successor to Driltech, Inc., a Delaware corporation with a principal place of business in Florida.

The drill rig at issue is a D40K model that was originally manufactured by Driltech in Florida in 1978. The rig was sold by Driltech in 1978 to North Star Pipe & Supply Company in Minnesota. At some point in 1978 or 1979, North Star sold the rig to ICOS Corporation of America in New York. ICOS apparently purchased the rig to be used on a job site in Missouri, and then sent it to its equipment yard in New Jersey.

In 1993, John Wentworth, the president of Welltech, learned from an unidentified individual that ICOS was willing to sell the rig. The individual told Wentworth that the rig was sitting in a field in New York. According to Wentworth, this individual was not associated with Driltech in any way. Wentworth purchased the rig in 1993 and moved it to Sterling, Massachusetts.

After purchasing the rig, Wentworth occasionally purchased Driltech parts for it from the Rotary Drilling Equipment Company in Scranton, Pennsylvania. According to Sandvik, in 2004 Rotary Drilling was an independent, non-exclusive dealer of drill machinery and parts. In January 2005, Sandvik purchased the assets of the Rotary Drilling Equipment Company.

### C.      Commercial Activity in Massachusetts by Driltech/Sandvik

According to Sandvik, Driltech (1) never maintained an office, facility or mailing address in Massachusetts; (2) never owned or leased any real property located in Massachusetts; (3) never maintained a telephone number in Massachusetts; (4) never had any employees in Massachusetts; (5) never had any bank accounts in Massachusetts; (6) never advertised in periodicals or media specifically directed at residents of Massachusetts; and (7) never registered to transact business in Massachusetts.

Sandvik contends that from 1984 through 2004, Driltech's direct sales in Massachusetts represented .0263% of its total sales. The record does not reflect the total volume of direct sales either by dollars or by units. Other sales of Driltech products in Massachusetts during that period were made by Rotary Drilling, an independent and non-exclusive dealer. The record likewise does not reflect the volume of sales in Massachusetts through dealers.

In 2005, Driltech and another limited liability company, Driltech Mission LLC, were

consolidated into Sandvik. Like Driltech, Sandvik contends that it has (1) never maintained any office, facility, or mailing address in Massachusetts; (2) never owned or leased any real property located in Massachusetts; (3) never maintained a telephone number in Massachusetts; (4) never had any employees in Massachusetts; (5) never had any bank accounts in Massachusetts; and (6) never advertised in periodicals or media specifically directed at residents of Massachusetts.

Unlike Driltech, Sandvik registered with the Secretary of the Commonwealth to do business in Massachusetts on July 15, 2005. On February 15, 2007, Sandvik obtained a resident agent for service of process in Massachusetts, the CT Corporation System.[1]

In 2005, Sandvik's sales in Massachusetts represented 0.7% of its total sales. In 2006, its sales in Massachusetts represented 0.5% of its total sales. Again, there is no information in the record concerning the actual volume of sales.

### D. Present Claims

On June 19, 2007, Fiske filed the present action against Sandvik, alleging negligence (Count I), breach of implied warranty of merchantable quality and/or fitness for a particular purpose (Count II), and unfair and deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A §§ 2, 9 (Count III). Among other things, the complaint alleges negligent design and negligent marketing, sale, and distribution based on a failure to warn. Sandvik has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) based on lack of personal jurisdiction.

---

[1] According to Fiske, Sandvik has also made prior judicial admissions that affect the jurisdictional analysis. These purported admissions, and their legal effect, if any, will be discussed below.

**II**.   **Analysis**

    **A.**   **General Principles of Personal Jurisdiction**

The exercise of personal jurisdiction over a defendant must be both authorized by statute and consistent with the due process requirements of the United States Constitution. *Good Hope Indus., Inc. v. Ryder Scott, Co.*, 378 Mass. 1, 5-6 (1979); *Nowak v. Tak How Inv., Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996); *Intech, Inc. v. Triple "C" Marine Salvage, Inc.*, 444 Mass. 122, 125 (2005). Furthermore,

> A district court may exercise authority over a defendant by virtue of either general or specific jurisdiction. Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities. General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.

*United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (citations and quotations omitted).

The plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002). A district court faced with a motion to dismiss under Rule 12(b)(2) may choose among several methods for determining whether the plaintiff has met its burden: the "prima facie" standard, the "preponderance-of-the-evidence" standard, or the "likelihood" standard. *Id.* at 50-51 & n.5. The "most conventional" and "most commonly used" of these methods is the "prima facie" standard. *Id.* at 51; *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992).

In conducting that analysis, the court is required to take specific facts affirmatively alleged

5

by the plaintiff as true (whether or not disputed) and "construe them in the light most congenial to the plaintiff's claim." *Massachusetts School of Law at Andover, Inc. v. American Bar Association*, 142 F.3d 26, 34 (1st Cir. 1998). The court then "add[s] to the mix facts put forward by defendants, to the extent they are uncontradicted." *Daynard*, 290 F.3d at 51. The prima facie method is appropriate here because the jurisdictional inquiry does not involve materially conflicting versions of the relevant facts. *See Foster-Miller*, 46 F.3d at 145-146 (describing the preponderance-of-the-evidence standard and likelihood standards).

### B. Specific Jurisdiction

Although plaintiff has argued only for existence of general jurisdiction under Mass. Gen. Laws ch. 223A, § 3(d), he nonetheless states that he "[does not] waive[] arguments that other sections of [§ 3] and or principles of 'specific jurisdiction' may apply." Pl. Mem. in Opp. to Mot. to Dismiss, at 6. The only arguably applicable basis for specific jurisdiction is § 3(c), which provides as follows:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from: . . .
>
> (c) causing tortious injury by an act or omission in this commonwealth . . .

*Id.* As noted, the complaint essentially alleges both negligent design and a negligent failure to warn. There does not appear to be any evidence that the design of the rig occurred in Massachusetts, or that any aspect of the marketing, sale, or distribution of the rig, with or without warnings, occurred in Massachusetts. Such claims cannot form the basis of jurisdiction under § 3(c) because a negligent act or a failure to act outside the state cannot be considered an act or omission *in* Massachusetts. *See, e.g., Chlebda v. H.E. Fortna and Brother, Inc.*, 609 F.2d 1022,

6

1023-24 (1st Cir. 1979) (stating in analysis of § 3(c) "an omission, viz., a failure to act, may [not] be thought to furnish the minimum contact with that state . . . needed to confer jurisdiction"). The injury is thus clearly not the result of an "act or omission in this commonwealth" within the meaning of § 3(c). The Court will accordingly turn to the general jurisdiction analysis.

### C.  General Jurisdiction

As noted, general jurisdiction "exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nonetheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Mass. School of Law*, 142 F.3d at 34; *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 138-39 (1st Cir. 2006). There are two aspects to inquiry: the assertion of jurisdiction must be both authorized by statute and consistent with the requirements of due process.

#### 1.  The Long-Arm Statute

The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3(d), states in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . .
>
> (d)   Causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

Section 3(d) is the statutory authorization for the assertion of general personal jurisdiction in Massachusetts. *See Noonan v. Winston*, 135 F.3d 85, 92-93 (1st Cir. 1998); *Landmark Bank v. Machera*, 736 F. Supp. 375, 384 (D. Mass. 1990) ("This provision . . . reflects the theory of general personal jurisdiction").

There is no question that the first requirement of § 3(d) has been met—plaintiff alleges that he suffered a tortious injury caused by an act or omission outside the commonwealth. Defendant contends, however, that plaintiff cannot satisfy the second requirement, as it does not regularly do or solicit business, engage in "any other persistent course of conduct," or derive substantial revenue in Massachusetts.

Section 3(d) is to be construed "extremely broadly." *Noonan v. Winston Co.*, 135 F.3d 85, 92 (1st Cir. 1998). Additionally, the phrase "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth" is disjunctive—only one of its prongs need be satisfied to find statutory authorization for personal jurisdiction. *Id.* The question here is whether plaintiff can satisfy either the first or the third prong.

Under the first prong, jurisdiction may be found if the defendant "regularly does or solicits business" in the commonwealth. Defendant contends that it has not advertised or otherwise solicited business in Massachusetts, and plaintiff at this stage has proffered no contrary evidence. Whether defendant "does business" in the state is less clear. Defendant has acknowledged making some direct sales into Massachusetts, as well as indirect sales through at least one dealer.[2] Massachusetts sales as a percentage of defendant's total volume appear to be very low, but there is no evidence as to the actual volume of sales, whether measured by dollars or units. Nor is there

---

[2] The existence of a dealership arrangement with a company in the forum state is not enough, standing alone, to establish minimum contacts for personal jurisdiction purposes. *See Killion v. Commonwealth Yachts*, 421 F. Supp. 2d 246, 257 (D. Mass. 2006).

any evidence as to any sales of parts or services or any other possible sources of revenue.[3]

Plaintiff also notes that defendant has registered as a foreign corporation to do business in Massachusetts and has named a registered agent for service of process in Massachusetts. While such activities, standing alone, are not enough to confer general personal jurisdiction, they add some modest weight to the jurisdictional analysis. *See Sandstrom v. Chemlawn Corp.*, 904 F.2d 83, 89 (1st Cir. 1990).[4]

The third prong requires that the defendant derive "substantial revenue from goods used or consumed or services rendered" in Massachusetts. The product at issue does not have to be necessarily *sold* in Massachusetts, or to Massachusetts customers, if substantial revenue is derived from goods that are *used* in Massachusetts. *See Merced v. JLG Industries, Inc.*, 193 F. Supp. 2d 290, 293 (D. Mass. 2001).[5] According to defendant, it has earned only small amounts of revenue from direct sales to Massachusetts customers. Again, the percentage of sales appears to be low—only .0263% of Driltech's direct sales were to Massachusetts customers over a twenty-year span, and only 0.7% and 0.5% of Sandvik's direct sales were in Massachusetts in 2005 and 2006, respectively. Because of a lack of data, however, there is insufficient information in the record,

---

[3] Plaintiff notes that Welltech bought parts for its Driltech drill rig from Rotary Drilling, a company whose assets were purchased by defendant in 2005. Rotary Drilling apparently continues to sell drill parts in Massachusetts. The volume of such sales is not reflected in the record.

[4] Plaintiff has also submitted evidence showing that Sandvik, Inc. is also registered to do business in Massachusetts and has the same registered agent as defendant. Sandvik, Inc., is not, however, a defendant in this case, and there is no basis in the record to disregard corporate formalities. *See Platten*, 437 F.3d at 139 ("the [general jurisdiction] bar is set even higher . . . [when] plaintiffs seek to disregard the corporate form").

[5] The First Circuit, however, has rejected a "stream of commerce" theory of personal jurisdiction—that is, the theory that because defendant placed its product into the stream of interstate commerce, knowing that it would end up in Massachusetts, it undertook action that was purposefully directed at Massachusetts. *See Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 85 (1st Cir. 1997) (*citing Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 107 (1987)); *Killion*, 421 F. Supp. 2d at 257.

however, to determine whether those sales produced revenues that were "substantial."

The evidence at present appears to be insufficient to demonstrate that the minimal requirements for general jurisdictional under the long-arm statute have been met. Essentially, defendant has made some (apparently modest) sales in Massachusetts, and has registered to do business and appointed an agent for service of process. The Court will nonetheless turn next to the constitutional analysis.

### 2. **Due Process**

Even assuming that the statutory requirements have been met, the exercise of general personal jurisdiction must also satisfy the Due Process Clause of the Fourteenth Amendment. To do so, two criteria must be satisfied. First, there must be "continuous and systematic general business contacts" between the foreign defendant and the forum. *Swiss American*, 274 F.3d at 618 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). This test "is considerably more stringent than that applied to specific jurisdiction questions." *Swiss American*, 274 F.3d at 619 (*citing Noonan v. Winston Co.*, 135 F.3d 85, 93 (1st Cir. 1998)). Second, plaintiff must show that the "exercise of jurisdiction would be reasonable." *Swiss American*, 274 F.3d at 619. That inquiry is based on various so-called "gestalt" factors used to determine the fundamental fairness of exercising jurisdiction. *See Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990).

Here, the evidence of "continuous and systematic general business contacts" is essentially the same as the evidence described above for general jurisdiction under the long-arm statute. Plaintiff also, however, seeks to establish general personal jurisdiction by relying on two purported "judicial admissions" of the defendant.

First, in November 2004, a corporation called Sandvik, Inc., was named as a defendant in a lawsuit in this Court. *See Tonino Aceto v. Lincoln Electric Company, Sandvik, Inc., et. al.*, Civil Action No. 04-12740-MEL (D. Mass.) (Pl. Ex. 5). Paragraph 20 of the complaint alleged that "Defendant Sandvik, Inc., . . . is a corporation incorporated under the laws of Delaware that has done and is doing business in Massachusetts, . . . ." Sandvik, Inc., responded in its answer that it admitted the allegations in paragraph 20.

That is not an admission by the defendant here. Sandvik, Inc.—although it may be an affiliated company—is not the defendant in this case. Its activities are relevant to the personal jurisdiction inquiry only if the Court can conclude that the corporate form should be disregarded. *See Negron-Torres v. Verizon Communications, Inc.*, 478 F.3d 19, 26 (1st Cir. 2007). Plaintiff has not addressed that issue, nor submitted any evidence on the subject.[6]

Second, plaintiff contends that one of the companies that consolidated to form defendant (Driltech Mission LLC) consented to personal jurisdiction in this Court in 2003. *See Dilk v. Driltech Mission, LLC*, Civil Action No. 03-30051-MAP (D. Mass.). The evidence submitted in support of that claim, however, only reveals that Driltech Mission LLC did not contest personal jurisdiction, without any indication as to why, or why that acquiescence is relevant here.

Accordingly, the evidence as to "continuous and systematic general business contacts" is thin at best. Furthermore, general jurisdiction has not been found in situations involving comparable (or greater) contacts than are presented here. *See, e.g., Noonan*, 135 F.3d at 93-94

---

[6] Even if the statement were attributable to the defendant here, its effect would be doubtful at best. Sandvik, Inc. merely admitted that it "has done and is doing business in Massachusetts." Such a vague admission, alone, does not establish that its past and present business activity rises to the level of "continuous and systematic general business contacts" with Massachusetts.

11

(no general personal jurisdiction where a foreign corporation conducted regular and targeted business solicitations of Massachusetts companies, raised approximately $585,000 worth of business from a foreign company, and sent an employee into the forum to conduct work-related activities); *Donatelli*, 893 F.2d at 469 n.8; 470 (no general personal jurisdiction where for ten years NHL provided league officials at exhibition hockey games, conducted scouting, provided television broadcasts, and sold products bearing the NHL logo in the forum state); *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 216-217 (1st Cir. 1984) (no general personal jurisdiction where a foreign corporation advertised in trade journals that circulated in the forum, employed eight full-time sales representatives to work in the forum state, and sold products to wholesale distributors in the forum state); *Seymour v. Parke, Davis and Co.*, 423 F.2d 584 (1st Cir. 1970) (no general personal jurisdiction where a foreign corporation advertised in the forum and employed several salesmen in the forum state who disseminated product information and took product orders).

There is therefore considerable doubt as to whether the exercise of personal jurisdiction would offend traditional notions of "fair play and substantial justice," *see Foster-Miller*, 46 F.3d at 150; *International Shoe*, 320 U.S. at 316, without considering whether the exercise of personal jurisdiction is reasonable in light of the "gestalt" factors. *Swiss American*, 274 F.3d at 619.

**IV.    Request for Jurisdictional Discovery**

Plaintiff requests leave to conduct jurisdictional discovery if this Court were to conclude that the current record is insufficient to permit personal jurisdiction. As a general matter, "a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." *Negron-Torres*, 478 F.3d at 27 (*quoting*


*Swiss American*, 274 F.3d at 626). In addition to making a colorable claim, it is also incumbent upon the plaintiff to "present facts to the court which show why jurisdiction would be found if discovery were permitted." *Negron-Torres*, 478 F.3d at 27 (quoting *Crocker v. Hilton Intern. Barbados, Ltd.*, 976 F.2d 797, 801 (1st Cir. 1992)). Overall, this court has "broad discretion" to decide whether discovery is required on the issue of personal jurisdiction. *Crocker*, 976 F.2d at 801.

Plaintiff here argues that the jurisdictional discovery requested "would yield information relevant to the extent and types of contacts the defendant, its predecessors and affiliates have or have had in or with the Commonwealth of Massachusetts including, but not limited to, the levels of contacts and revenues generated in the Commonwealth of Massachusetts, directly or indirectly." Under the circumstances here, and given the substantial stakes at issue in this case, the Court will permit plaintiff to engage in such discovery. Plaintiff shall be permitted a period of 90 days, or until May 5, 2008, in which to conduct such discovery. Defendant may file a renewed motion to dismiss for lack of personal jurisdiction on or before May 26, 2008.

## V.     Conclusion

For all the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction is DENIED without prejudice subject to its renewal after a 90-day period of discovery limited to jurisdictional issues as indicated herein.

**So Ordered.**

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge

Dated: February 4, 2008